## CITIZENS BANK OF COLQUITT *v.* SEMINOLE COUNTY BOARD OF EDUCATION *et al.*

No. 7507. June 17, 1930.

*N. L. Stapleton* and *H. A. Wilkinson,* for plaintiff.

*H. G. Rawls* and *J. T. Goree,* for defendants.

Beck, P. J. Citizens Bank of Coolquitt, Georgia, filed its petition for the writ of mandamus against Seminole County Board of Education and the members thereof, and later by amendment and order of the court made the superintendent of schools of the county a party defendant in the proceeding. The petition sought to recover against the defendants $4500, with interest and attorneys' fees, as the funds of the plaintiff, which it alleges were received by defendants. The petition was in three counts. The first count was an action on a promissory note; the second, for money had and received; the third, for cash received under a certain cashier's

check payable to Seminole County Board of Education and Otho Benton, county superintendent of schools, said cashier's check having been issued by the plaintiff and having been cashed by Benton.

At the trial the plaintiff amended the three counts, in substance as follows: Otho Benton, while superintendent of schools of Seminole County, and in the year 1927, made application to the plaintiff for a loan of $3500.00, and at the same time presented what purported to be a resolution of the Board of Education of Seminole County, but which did not appear to have been signed by any member thereof, authorizing said loan, and presented a note for such sum, which purported to have been signed by the president of the board of education and the superintendent of schools. The resolution presented purported to be a certified copy of an original resolution, and the county superintendent of schools attached the seal of the county board of education to the purported certified copy, but the resolution certified by him did not show a purported signature of a single member of the county board of education. The loan was made, and the county superintendent of schools used the money for his own personal use. At maturity this note was paid by another loan obtained from the Citizens Bank & Trust Company at Bainbridge, Georgia, the loan having been obtained by Benton in a manner similar to the one above mentioned. Subsequently, on March 6, 1928, Benton obtained a $5,000 loan from the plaintiff, and the funds derived from this loan were used by Benton, $3500 of it to pay Citizens Bank & Trust Company of Bainbridge, and $1500 for his personal use. This third loan matured on December 31, 1928. On December 28, 1928, Benton procured from the plaintiff a loan of $4500 in the same manner as above described, and the money thus obtained was applied on this last-mentioned loan of $5000, Benton paying individually $500, and this, with the $4500 thus borrowed, retired the indebtedness on the $5000 loan. The plaintiff, in count 1 of its petition, sued on the last-mentioned note for $4500.

The defendants demurred generally to the petition. The demurrer was sustained and the petition dismissed, and the plaintiff excepted.

The court properly sustained the general demurrer and dismissed the case. On neither of the counts was the plaintiff entitled to a judgment in its favor. The note given for the money which the

plaintiff seeks to recover in this case was a forgery. To the petition as originally filed the plaintiff filed an amendment, in which it is alleged: "Upon information plaintiff alleges that none of the members of the Board of Education of Seminole County knew anything whatever of any of said transactions until on or about April 1st, 1929. None of said resolutions referred to herein were passed by the board of education at any meeting, either regular, call meeting, or otherwise. The minutes of the board of education do not disclose any resolution or any discussion relative to borrowing any money from any bank or person during the times hereinabove referred to; neither of the notes herein referred to were signed by J. T. Goree as president of the county board of education, the purported signature thereon having been a forgery. None of the records of the office of the county superintendent of schools, including the minutes, financial statements, monthly balance-sheets, disbursement sheets, the audit of the books made by the State school auditor, cash-book, nor any other record whatever, show or disclose any information or fact whatever in connection with any of said transactions hereinabove referred to, the same having been a matter handled by the said Otho Benton without the knowledge or consent of any of said members of the board of education. Neither of said acts have been ratified or approved by any member of said board of education. Neither G. C. Jinks, cashier of Citizens Bank of Colquitt, nor any officer of said bank had any knowledge of the facts that the resolutions and notes hereinbefore referred to were forgeries and were not in fact authorized by the Board of Education of Seminole County until about the first day of April, 1929, when notified by J. T. Goree, president of the board."

While Otho Benton, who executed the note in question in this case, was a county school superintendent and secretary of the board of education, he had no authority to contract a loan without action taken by the board and embodied in a proper resolution properly signed to obtain it, even if he had intended it for proper purposes. "When a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting

up the forgery or want of authority." Michie's Code, § 4294(23). In this case it appears that no member of the county board of education, the defendant, had any knowledge whatever of any of said transactions that resulted in the giving of the note and the borrowing of the money which constitutes the basis of this action. And the doctrine of estoppel can not be applied in this case against these defendants, under the allegations of the petition as amended; for it contains no allegation of facts showing that the defendant received the loan or the proceeds thereof, or that it applied it to the use of the board or any of its obligations legally incurred. Under section 1551(102) of Michie's Code, the county board of education has authority to borrow money to pay teachers only. "Before boards of education can borrow money for the purposes authorized, there shall be passed by the board a resolution authorizing said money to be borrowed, stating the amount of the money to be borrowed, the length of time it is to be used, the rate of interest to be paid, and for what purposes borrowed, . . which resolution shall be by the county school superintendent recorded on the minutes of the meetings of said board of education." Michie's Code, § 1551(103).

In this case the certified copy of the resolution set out in the record did not show that the resolution was ever passed by the board or signed by any of the members of the board, or that it had ever been entered on the minutes of the meetings of the board of education. Although it has been held that "An action for money had and received may be maintained by one who has loaned money to a county, and which has been used by it to discharge a legally incurred liability for a current expense, although the governing official or officials of a county have no authority to borrow the money or to give a note therefor" (*Butts County* v. *Jackson Banking Co.*, 129 *Ga.* 801, 60 S. E. 149, 15 L. R. A. (N. S.) 567, 121 Am. St. R. 244), this case does not fall within that ruling, because the money was not used to discharge a legally incurred liability, and in fact was not used by the board at all. In the brief of counsel for the plaintiff is quoted the substance of the rule stated above; and it is added that "this rule has been extended and adhered to." It has been adhered to, but it has not been extended to cover a case like the instant case. The opinion delivered in the case cited set forth fully the reasons and equitable principles upon which the case was decided; in the course of the opinion it was said: "The prin-

ciple of liability rests upon the theory that the obligation implied by the law to pay does not originate in the unlawful contract, but arises from considerations outside of it. In ascertaining the quantum of liability the amount of the loan is not taken into account, but the measure of recovery is the money actually applied to lawful municipal or county uses. The obligation to account for money received by the county, and actually devoted to lawful purposes, rests upon the broad principle of common honesty, which will not permit the county to retain the benefit of money lawfully applied to its use, and at its request, simply because the county lacked the power to borrow the money." It was further said: "In an action depending on the obligation or duty called quasi-contract, the measure of the recovery is the extent of the duty or obligation imposed by law, and is expressed by the amount which the court considers the defendant has been unjustly enriched at the expense of the plaintiff. If a recovery were allowed against a municipal corporation on a note for money borrowed, the judgment must be for the amount of the note, however large, and although the money may have been squandered. But in an action against a town for money had and received, the question is not what the claimant has parted with to officers who were not authorized to take his money for the town, or what they have promised him, but how much has the town been benefited. If the money was squandered, there can be no recovery; if it were used extravagantly for buildings or enterprises not reasonably necessary for municipal purposes, there can be no recovery beyond the actual benefit."

The reading of these extracts and a consideration of the comprehensive reasoning there stated, with the necessary deductions therefrom, shows conclusively that the plaintiff can not enforce the demands which are made in this suit against the county board of education. Outside authorities are to the same effect. In 19 R. C. L. 1066, it is said: "A municipal corporation is not bound by a contract made in its name by one of its officers or by a person in its employ, though within the scope of its corporate powers, if the officer or employee had not authority to enter into such a contract on behalf of the corporation. The principle by which a private employer is held liable for unauthorized acts of his agents on the ground that he has impliedly held them out as having a general authority to act for him has a much more limited application to

municipal corporations; and it is generally held that those dealing with the officers or agents of a municipal corporation must at their peril see to it that such officers or agents are acting within their authority, the reason for the distinction being that in the case of private parties the actual extent of authority is known only to principal and agent, whereas in the case of a municipal corporation it is a matter of record in the statutes of the State or in the proceedings of the municipal council. The mere fact that by virtue of such a supposed contract goods were delivered to the corporation or services rendered which were beneficial thereto is not sufficient to raise an implied contract to pay for the benefits thus received, in the absence of ratification by the proper authorities of the municipality." See also 22 R. C. L. 459. "Before boards of education can borrow money for the purposes authorized, there shall be passed by said board a resolution authorizing said money to be borrowed," etc. Michie's Code, § 1551(103). Here no resolution was passed. The plaintiff, the lender of the money in question, could easily have ascertained by an inspection of the minutes of the meetings of the board that no such resolution had been passed. We do not think that a further discussion of the questions involved here or a further citation of authorities is required. Other reasons might be added by way of argument to show that the plaintiff is not entitled to the relief sought, and that the court did not err in sustaining the general demurrer.

*Judgment affirmed. All the Justices concur.*